<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GEORGE SAQA,<br><br>      Plaintiff,<br><br>v.<br><br>FACTORY MUTUAL INSURANCE COMPANY,<br><br>      Defendant. | Civil Action No. 23-3994 (SDW) (JBC)<br><br>**OPINION**<br><br>March 5, 2024 |

**WIGENTON**, District Judge.

  Before this Court is Defendant Factory Mutual Insurance Company's ("Defendant") motion to dismiss (D.E. 7 ("Motion")) Plaintiff George Saqa's ("Plaintiff") complaint (D.E. 1 at 10–53 ("Complaint")). Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331, 1332, and 1367. Venue is proper pursuant to 28 U.S.C. § 1441(a). This opinion is issued without oral argument pursuant to Rule 78. For the reasons stated below, the Motion is **GRANTED** and the Complaint is **DISMISSED WITHOUT PREJUDICE**.

**I. BACKGROUND**

  Defendant is an issuer of commercial property insurance and a former employer of Plaintiff. Complaint ¶ 2, at 1–2.[1] As an employee of Defendant, Plaintiff was responsible for the inspection of boilers at insured commercial properties. *Id.* ¶ 1, at 1. In this action, Plaintiff sues

---

[1] Since paragraph numbers recur throughout the Complaint, the Court references the relevant page numbers of the Complaint, in addition to the paragraph numbers.

Defendant for denying his religious exemption request from a COVID-19 vaccine mandate, which was a condition of his continued employment. *See generally id.*

### A. Factual History

In September 2021, Defendant announced a COVID-19 vaccine mandate as a condition of continued employment, along with a process for requesting religious exemptions. *Id.* ¶ 1, at 2. On November 12, 2021, Plaintiff submitted a religious exemption request via email. *Id.* at Ex. A. In a form attached to the email, Plaintiff indicated that he was "experiencing a conflict between [his] sincerely held religious beliefs and receiving the COVID-19 vaccine" because compliance with the mandate "would alter [his] biological anatomy at a cellular level, thereby negating God's creation." *Id.* Plaintiff explained that "God created [him] with a naturally robust immune system, and [he would] not alter His design." *Id.* Although Plaintiff submitted that it was "a sin against [his] God-given conscience to allow unwanted intrusions into [his] body," he acknowledged that he could not invoke a "specific tenet," that he was not a member of a "particular mainstream religion," and that he was simply a "spiritual being created by God." *Id.* Nevertheless, Plaintiff expressed the opinion that "[t]he law does not recognize the need for employers to consult religious scholars or examine church doctrine" and that "sincerely held religious, ethical, and/or moral beliefs" are the relevant considerations, "not the tenets or beliefs of a church, doctrine, religion, or religious scholars." *Id.* Plaintiff also attested that the form was "truthful, complete, and accurate to the best of [his] knowledge." *Id.*

On November 17, 2021, Defendant sought additional information from Plaintiff regarding his religious exemption request. *Id.* at Ex. B. In a letter sent via email, Defendant noted that Plaintiff's views were not "in accordance with the views of the vast majority of religious denominations." *Id.* In an attached questionnaire, Defendant asked Plaintiff to "clarify the precise

2

connection between [his] religious principle, practice, tenet or belief and [his] inability to receive a COVID-19 vaccine" and to "provide an independent statement of religious doctrine, from an authoritative religious leader or body where [his] religion has same, explaining what prohibits followers of [his] religious principle, practice, tenet or belief from receiving a COVID-19 vaccine." *Id.* Plaintiff believed that he was being "gaslighted" and that the letter was meant "to intimidate and/or dissuade him from proceeding" and "inform[] him that his religious beliefs as stated were unworthy of Defendant's respect or understanding." *Id.* ¶ 2, at 2. Nevertheless, Plaintiff completed the questionnaire by reiterating the points from his prior communication and attesting to the truthfulness, completeness, and accuracy of his responses. *Id.* at Ex. B. Plaintiff further stated that he did not "follow religious leaders" and could not "provide any statement from an authoritative religious leader," but that he did not receive any vaccinations or take any pharmaceuticals after the age of eighteen. *Id.* On November 25, 2021, Plaintiff sent his responses to Defendant via email. *Id.*

On December 6, 2021, Defendant informed Plaintiff that his religious exemption request was denied and that his employment would be terminated if he did not comply with the COVID-19 vaccine mandate. *Id.* ¶ 3, at 3. Specifically, Defendant sent a letter to Plaintiff via email, which concluded that he had "not shown a satisfactory basis for an accommodation on religious grounds" and that he was required to comply with the mandate within one week or lose his job. *Id.* at Ex. C. Thereafter, Plaintiff retained counsel. *Id.* ¶ 4, at 3.

On December 9, 2021, counsel for Plaintiff submitted a letter to Defendant. *Id.* at Ex. D. In the letter, counsel sought "reconsideration" of Defendant's denial of Plaintiff's religious exemption request, or "a new request" for a religious exemption. *Id.* In support, counsel summarized Plaintiff's views and sought "to provide additional context" by "clarify[ing] that his

religious identity and beliefs are rooted in Christianity." *Id.* According to counsel, Plaintiff believed that "all life is sacred," that "life begins at conception," and that "aborted fetal cell lines, genetically modified and/or artificially preserved or 'immortalized' human cell lines, viral vector technology, mRNA genetic modification technology, and spike protein technology" were impermissibly used to develop the COVID-19 vaccine. *Id.* Counsel also cited several biblical verses and explained that Plaintiff's "faith in God and Jesus Christ affirms his belief in the power of prayer and natural remedies as the primary immediate means of healing illnesses and injuries." *Id.* Although counsel reserved the right to seek legal relief, the letter emphasized that Plaintiff "tremendously values" his job and "would like nothing more" than to remain in his role. *Id.*

On January 4, 2022, Defendant terminated Plaintiff's employment after twenty years of service. *Id.* ¶¶ 5, 7, at 4. According to Plaintiff, other employees retained their jobs despite "performing the same or substantially similar work" and failing to comply with the COVID-19 vaccine mandate. *Id.* ¶ 6, at 4.

**B. Procedural History**

On March 3, 2022, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). *Id.* ¶ 8, at 4. In the filing, Plaintiff asserted that he was "discriminated against because of [his] religion, by being denied a religious accommodation" by Defendant. *Id.* at Ex. E. On September 23, 2022, the EEOC issued Plaintiff a Determination and Notice of Rights. *Id.* Although the EEOC determined that it would not proceed with an investigation, it notified Plaintiff of his right to sue Defendant. *Id.*

On December 22, 2022, Plaintiff filed this action against Defendant for violation of Title VII of the Civil Rights of 1964, 42 U.S.C. § 2000e *et. seq.* ("Title VII"), violation of the New Jersey Law Against Discrimination, N.J.S.A. §§ 10:5-1–10:5-50 ("NJLAD"), violation of the

Conscientious Employee Protection Act, N.J.S.A. §§ 34:19-1–34:19-14 ("CEPA"), wrongful termination, and unjust enrichment. D.E. 1 at 1–2; Complaint at 5–8. On July 26, 2023, Defendant removed this action from the Superior Court of New Jersey to this Court on the basis of federal question, diversity, and supplemental jurisdiction. *See* D.E. 1 at 1–8.

On August 16, 2023, Defendant filed the present motion to dismiss (*see* Motion), along with a brief in support (*see* D.E. 7-2). On September 5, 2023, Plaintiff filed an opposition brief (*see* D.E. 8), and on October 12, 2023, Defendant filed an amended reply brief (*see* D.E. 14).

## II.   LEGAL STANDARD

Under Rule 8, a complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, this standard "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). The factual allegations need not be detailed, but the complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570; *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (confirming that Rule 8 "requires a 'showing,' rather than a blanket assertion, of an entitlement to relief").

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips*, 515 F.3d at 231 (citations omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

5

suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). Determining whether allegations are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted). If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," then the complaint must be dismissed pursuant to Rule 12(b)(6). *Id.*

In deciding a motion to dismiss, a court may consider, not only "the allegations contained in the complaint," but also "exhibits attached to the complaint and matters of public record." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (quoting *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.,* 998 F.2d 1192, 1196 (3d Cir.1993)). Any "document integral to or explicitly relied upon in the complaint" may be considered as well. *Id.* (emphasis omitted) (quoting *In re Burlington Coat Factory Sec. Litig.,* 114 F.3d 1410, 1426 (3d Cir.1997)).

### III. DISCUSSION

#### A. Counts One and Two (Violations of the NJLAD and Title VII)

Plaintiff asserts that Defendant discriminated against him on the basis of religion in violation of the NJLAD and Title VII by (i) failing to accommodate him; (ii) treating him disparately; (iii) and retaliating against him. Complaint ¶ 2, at 5; *id.* ¶ 2 at 6. The Court will address each claim in turn.[2]

---

[2] "Analysis of a claim made pursuant to the NJLAD generally follows analysis of a Title VII claim." *Schurr v. Resorts Int'l Hotel, Inc.*, 196 F.3d 486, 498 (3d Cir. 1999). For example, New Jersey courts "have frequently looked to case law under Title VII . . . for guidance in developing standards to govern the resolution of LAD claims." *Carmona v. Resorts Int'l Hotel, Inc.,* 915 A.2d 518, 528 (N.J. 2007)) (quoting *Craig v. Suburban Cablevision, Inc.,* 660 A.2d 505, 508 (N.J. 1995)). Following this approach, courts in this district have relied upon the same standards to evaluate NJLAD and Title VII claims of disparate treatment and retaliation. *See, e.g.*, *Weiss v. Parker Hannifan Corp.*, 747 F. Supp. 1118, 1126 (D.N.J. 1990); *Phillips v. Starbucks Corp.*, 624 F. Supp. 3d 530, 538 (D.N.J. 2022). So too, this Court has utilized the same analysis for Title VII and NJLAD claims of failure to accommodate. *See Jackson v. New Jersey Juvenile Justice Comm'n*, 19-CV-17950, 2023 WL 22497, at *5 (D.N.J. Jan. 3, 2023); *see also Smith v. City of Atl. City*, 19-CV-6865, 2019 WL 1307877, at *4 (D.N.J. Mar. 22, 2019).

### i.     *Failure to Accommodate*

To state a claim for failure to accommodate, "the employee must show that: (1) she has a sincere religious belief that conflicts with a job requirement; (2) she told the employer about the conflict; and (3) she was disciplined for failing to comply with the conflicting requirement." *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 319 (3d Cir. 2008).  If a prima facie case is established, "the burden shifts to the employer to show either [1] it made a good-faith effort to reasonably accommodate the religious belief, or [2] such an accommodation would work an undue hardship upon the employer and its business." *E.E.O.C. v. GEO Grp., Inc.*, 616 F.3d 265, 271 (3d Cir. 2010) (quoting *Webb v. City of Philadelphia*, 562 F.3d 256, 259 (3d Cir. 2009)) (alterations omitted).

Here, Plaintiff does not adequately allege that he had a sincere religious belief.  The Third Circuit has adopted a three-pronged approach for determining whether beliefs are religious:

> First, a religion addresses fundamental and ultimate questions having to do with deep and imponderable matters. Second, a religion is comprehensive in nature; it consists of a belief-system as opposed to an isolated teaching. Third, a religion often can be recognized by the presence of certain formal and external signs.

*Fallon v. Mercy Catholic Med. Ctr. of Se. Pennsylvania*, 877 F.3d 487, 491 (3d Cir. 2017) (quoting *Africa v. Com. of Pa.*, 662 F.2d 1025, 1032 (3d Cir. 1981)).  According to the Third Circuit, the view that a vaccine inflicts the moral wrong of harming the body is an isolated teaching, not a religious belief.  *Id.* at 492.  As reflected in the allegations, Plaintiff's view was slightly more robust, incorporating the concern that the COVID-19 vaccine would manipulate his divine-created body and result in a sin against his God-given conscience.  But this view still was not a religious belief, as it was not part of a comprehensive system that addressed fundamental and ultimate questions or that could be recognized by formal and external signs.  *See, e.g.*, *McKinley v. Princeton Univ.*, 22-CV-5069, 2023 WL 8374486, at *4 (D.N.J. Dec. 1, 2023) (finding the belief

7

that the "body is a temple" is not religious); *Geerlings v. Tredyffrin/Easttown Sch. Dist.*, 21-CV-4024, 2021 WL 4399672, at *6–8 (E.D. Pa. Sept. 27, 2021) (finding the beliefs that "the body is a gift from God," that "life is a gift from God," and that "people are made in the image of God" are not religious). Indeed, Plaintiff professed that he was spiritual, but that his beliefs were not motivated by any tenets, mainstream religions, or religious leaders.[3] To the extent that Plaintiff's counsel subsequently rooted these beliefs in Christianity, biblical verses, and religious concerns about fetal cell development and abortion, "the timing of the request render[ed] it suspect" because "it follow[ed] an earlier request by the employee for the same benefit for secular reasons." U.S. EQUAL EMP. OPPORTUNITY COMM'N, EEOC DT NO. 915.063, COMPLIANCE MANUAL ON RELIGIOUS DISCRIMINATION § A.2 (2021); *see also Aukamp-Corcoran v. Lancaster Gen. Hosp.*, 19-CV-5734, 2022 WL 507479, at *4 (E.D. Pa. Feb. 18, 2022) (adopting EEOC guidance to find that religious beliefs were insincere). Plainly, no allegations give rise to a plausible inference that the religious beliefs elaborated by counsel were sincere.[4] To the contrary, prior to counsel's involvement, Plaintiff twice provided the same alternative picture of his views, which he attested was complete, truthful, and accurate.[5] Therefore, Plaintiff fails to state a claim for violation of the NJLAD or Title VII under a failure to accommodate theory.

---

[3] As such, Plaintiff differs from the plaintiffs in *Aliano v. Twp. of Maplewood*, who rooted their beliefs in Christianity, biblical verses, and religious concerns about fetal cell development and abortion. 22-CV-5598, 2023 WL 4398493, at *6–9 (D.N.J. July 7, 2023).

[4] At most, Plaintiff stated that he did not receive any vaccinations or take any pharmaceuticals after the age of eighteen. Without more, the Court cannot plausibly infer that this conduct reflected sincere religious beliefs, as opposed to medical or other moral concerns.

[5] Even if Plaintiff adequately alleges that he had a sincere religious belief, an affirmative defense for undue hardship likely is available to Defendant. *See Leveto v. Lapina,* 258 F.3d 156, 161 (3d Cir. 2001) (quoting *ALA, Inc. v. CCAIR, Inc.*, 29 F.3d 855, 859 (3d Cir.1994)) ("[A] complaint may be subject to dismissal under Rule 12(b)(6) when an affirmative defense . . . appears on its face."). Under the circumstances, an accommodation may have worked an undue hardship on Defendant and its business, as the insurer may have placed clients at increased risk of a devastating pathogen during Plaintiff's inspections at insured premises. *See COVID Data Tracker*, CENTER FOR DISEASE CONTROL AND PREVENTION, https://covid.cdc.gov/covid-data-tracker/#datatracker-home (last visited Mar. 5, 2024) (reporting total deaths in United States due to COVID-19 at over 1.18 million).

### ii. *Disparate Treatment*

To state a claim for disparate treatment, "[t]he plaintiff must demonstrate that she (1) is a member of a protected class, (2) was qualified and rejected for the position she sought, and (3) nonmembers of the protected class were treated more favorably." *Abramson v. William Paterson Coll. of New Jersey*, 260 F.3d 265, 281–82 (3d Cir. 2001).

Here, Plaintiff does not adequately allege that he was a member of a protected class or that nonmembers of the protected class were treated more favorably. As discussed above, Plaintiff has not demonstrated that he was a religious adherent. And conclusory allegations aside, Plaintiff has not demonstrated that similarly situated persons retained their jobs. Therefore, Plaintiff fails to state a claim for violation of the NJLAD or Title VII under a disparate impact theory.

### iii. *Retaliation*

To state a claim for retaliation, an employee must plead that "(1) she engaged in a protected activity, (2) she suffered an adverse employment action, and (3) there was a causal connection between the participation in the protected activity and the adverse action." *Carvalho-Grevious v. Delaware State Univ.*, 851 F.3d 249, 257 (3d Cir. 2017).

Here, Plaintiff does not adequately allege that he engaged in protected activity. While Plaintiff alleges that he insisted on his eligibility for a religious exemption in the face of perceived gaslighting, disrespect, and intimidation, "[a] general complaint of unfair treatment is insufficient to establish protected activity." *Curay-Cramer v. Ursuline Acad. of Wilmington, Delaware, Inc.*, 450 F.3d 130, 135 (3d Cir. 2006). Rather, "complaints must be specific enough to notify management of the particular type of discrimination at issue," *Sanchez v. SunGard Availability Servs. LP*, 362 Fed. Appx. 283, 288 (3d Cir. 2010) (citing *Barber v. CSX Distrib. Servs.*, 68 F.3d 694, 702 (3d Cir.1995)), and a complainant must have an objectively reasonable belief that

unlawful discrimination occurred, *Daniels v. Sch. Dist. of Philadelphia*, 776 F.3d 181, 193–94 (3d Cir. 2015). The allegations do not suggest that Plaintiff specifically notified Defendant of a particular type of discrimination, let alone that Plaintiff had an objectively reasonable belief that unlawful discrimination occurred. Instead, Plaintiff applied for a religious exemption and expressed the unsubstantiated opinion that he qualified for the exemption under the law. Counsel provided further context for this opinion and reserved the right to seek legal relief, but counsel also clarified that Plaintiff sought reconsideration or a new request so that Plaintiff could achieve his goal of remaining in a valued role.[6] These allegations suggest, not that Plaintiff and counsel accused Defendant of wrongdoing, but that Plaintiff and counsel attempted to convince Defendant that a religious exemption was warranted. Therefore, Plaintiff fails to state a claim for violation of the NJLAD or Title VII under a retaliation theory.

### B. Count Three (Violation of CEPA)

To state a claim for violation of CEPA, a plaintiff must plead that "(1) the plaintiff reasonably believed that [the] employer's conduct violated a law or regulation; (2) that the plaintiff performed 'whistle-blowing activity' as defined in CEPA; (3) that an adverse employment action has been taken against him or her; and (4) that the whistle-blowing activity caused such adverse employment action." *Ivan v. Cnty. of Middlesex*, 595 F. Supp. 2d 425, 468 (D.N.J. 2009).

Here, Plaintiff does not adequately allege that he performed whistle-blowing activity or that he reasonably believed that Defendant violated a law or regulation. To satisfy these statutory elements, an employee must establish that he:

> (a) Discloses, or threatens to disclose to a supervisor or to a public body an activity, policy or practice of the employer . . . that the employee reasonably believes [is unlawful or fraudulent];

---

[6] Even if the communication from counsel was protected activity, there was no causal connection between the communication and an adverse employment action, as Defendant decided to terminate Plaintiff's employment prior to counsel's involvement.

> (b) Provides information to, or testifies before, any public body conducting an investigation, hearing or inquiry into any violation of law, or a rule or regulation promulgated pursuant to law, by the employer . . . ;
> (c) Objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes [is unlawful, fraudulent, or incompatible with public policy].

N.J.S.A. § 34:19–3.  Since subsection (b) is plainly inapplicable, Plaintiff must meet the conditions of subsection (a) or (c) in order to satisfy the statutory elements.  However, Plaintiff cannot meet these conditions on the current allegations.  As discussed, Plaintiff and counsel merely expressed a legal disagreement with Defendant as to whether a religious exemption was warranted under the law.  Such a "routine dispute" about an "internal" matter is not an "objection to, or reporting of, an employer's illegal or unethical conduct."  *Hitesman v. Bridgeway, Inc.*, 93 A.3d 306, 319 (N.J. 2014).  Indeed, counsel "evidence[d] neither an intent to disclose nor object to [Defendant's] conduct" because his letter sought the "private" outcome of "a strong working relationship" for Plaintiff.  *Simons v. Boston Sci.*, 765 Fed. Appx. 773, 778–79 (3d Cir. 2019) (citations omitted).[7]  Therefore, Plaintiff fails to state a claim for violation of CEPA.

### C. Counts Four and Five (Wrongful Termination and Unjust Enrichment)

To state a claim for wrongful termination, an employee must show that "the discharge is contrary to a clear mandate of public policy." *Tartaglia v. UBS PaineWebber Inc.*, 961 A.2d 1167, 1179 (N.J. 2008) (quoting *Pierce v. Ortho Pharm. Corp.,* 417 A.2d 505, 512 (N.J. 1980)).  To state a claim for unjust enrichment, "a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust." *Iliadis v. Wal-Mart Stores, Inc.*, 922 A.2d 710, 723 (N.J. 2007) (quoting *VRG Corp. v. GKN Realty Corp.,* 641 A.2d 519, 554 (N.J. 1994)).  Here, the allegations point to no public policy that was contravened and no benefit that

---

[7] Again, even if the communication from counsel was whistle-blowing activity, it did not cause the adverse employment action.

was received or retained without payment. Therefore, Plaintiff fails to state a claim for wrongful termination or unjust enrichment.

## IV. CONCLUSION

For the reasons set forth above, the Motion is **GRANTED** and the Complaint is **DISMISSED WITHOUT PREJUDICE**.

                                                                */s/ Susan D. Wigenton*
                                                           **SUSAN D. WIGENTON, U.S.D.J.**

Orig:   Clerk
cc:     Parties
         James B. Clark, III, U.S.M.J.