**NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| GEORGE SAQA,<br><br>                Plaintiff,<br><br>v.<br><br>FACTORY MUTUAL INSURANCE COMPANY,<br><br>                Defendant. | Civil Action No. 23-3994 (SDW) (JBC)<br><br>**OPINION**<br><br>September 30, 2024 |

**WIGENTON**, District Judge.

Before this Court is Defendant Factory Mutual Insurance Company's ("Factory Mutual" or "Defendant") Motion to Dismiss (D.E. 22 ("Motion")) Plaintiff George Saqa's ("Mr. Saqa" or "Plaintiff") First Amended Complaint (D.E. 18 ("FAC")) for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331, 1332(a), and 1367(a). Venue is proper pursuant to 28 U.S.C. § 1391. This Court considers this matter without oral argument pursuant to Federal Rule of Civil Procedure 78. For the reasons stated herein, Factory Mutual's Motion is **GRANTED**, and the FAC is **DISMISSED WITH PREJUDICE**.

**I.    BACKGROUND[1]**

This action arises from Plaintiff's refusal to get a COVID-19 vaccination and Defendant's subsequent termination of Plaintiff's employment. (*See generally* D.E. 18.) Defendant is an issuer

---

[1] The Court acknowledges that the factual and procedural backgrounds largely mirror much of this Court's previous opinion (D.E. 15), as the FAC contains substantially the same facts as the original complaint and there have been no significant developments in the case since then.

of commercial property insurance and employed Plaintiff from 2002 until his termination in January 2022. In this action, Plaintiff sues Defendant for denying his religious exemption request from a COVID-19 vaccine mandate, which was a condition of his continued employment. (*See generally id.*)

### A. Factual History

In September 2021, Defendant announced a COVID-19 vaccine mandate as a condition of continued employment, along with a process for requesting religious exemptions. (*Id.* ¶ 5.) On November 12, 2021, Plaintiff submitted a religious exemption request via email. (*Id.* at Ex. A.) In a form attached to the email, Plaintiff indicated that he was "experiencing a conflict between [his] sincerely held religious beliefs and receiving the COVID-19 vaccine" because compliance with the mandate "would alter [his] biological anatomy at a cellular level, thereby negating God's creation." (*Id.*) Plaintiff explained that "God created [him] with a naturally robust immune system, and [he would] not alter His design." (*Id.*) Although Plaintiff submitted that it was "a sin against [his] God-given conscience to allow unwanted intrusions into [his] body," he acknowledged that he could not invoke a "specific tenet," that he was not a member of a "particular mainstream religion," and that he was simply a "spiritual being created by God." (*Id.*) Nevertheless, Plaintiff expressed the opinion that "[t]he law does not recognize the need for employers to consult religious scholars or examine church doctrine" and that "sincerely held religious, ethical, and/or moral beliefs" are the relevant considerations, "not the tenets or beliefs of a church, doctrine, religion, or religious scholars." (*Id.*) Plaintiff also attested that the form was "truthful, complete, and accurate to the best of [his] knowledge." (*Id.*)

On November 17, 2021, Defendant sought additional information from Plaintiff regarding his religious exemption request. (*Id.* at Ex. B.) In a letter sent via email, Defendant noted that Plaintiff's views were not "in accordance with the views of the vast majority of religious

denominations." (*Id.*) In an attached questionnaire, Defendant asked Plaintiff to "clarify the precise connection between [his] religious principle, practice, tenet or belief and [his] inability to receive a COVID-19 vaccine" and to "provide an independent statement of religious doctrine, from an authoritative religious leader or body … explaining what prohibits followers of [his] religious principle, practice, tenet or belief from receiving a COVID-19 vaccine." (*Id.*) Plaintiff believed that he was being "gaslighted" and that the letter was meant "to intimidate and/or dissuade him from proceeding" and "inform[] him that his religious beliefs as stated were unworthy of Defendant's respect or understanding." (*Id.* ¶ 6.) Nevertheless, Plaintiff completed the questionnaire by reiterating the points from his prior communication and attesting to the truthfulness, completeness, and accuracy of his responses. (*Id.* at Ex. B.) Plaintiff further stated that he did not "follow religious leaders" and could not "provide any statement from an authoritative religious leader," but that he did not receive any vaccinations or take any pharmaceuticals after the age of eighteen. (*Id.*) On November 25, 2021, Plaintiff sent his responses to Defendant via email. (*Id.*)

On December 6, 2021, Defendant informed Plaintiff that his religious exemption request was denied and that his employment would be terminated if he did not comply with the COVID-19 vaccine mandate. (*Id.* ¶ 7.) Specifically, Defendant sent a letter to Plaintiff via email, which concluded that he had "not shown a satisfactory basis for an accommodation on religious grounds" and that he was required to comply with the mandate within one week or lose his job. (*Id.* at Ex. C.) Thereafter, Plaintiff retained counsel. (*Id.* ¶ 8.)

On December 9, 2021, counsel for Plaintiff submitted a letter to Defendant. (*Id.* at Ex. D.) In the letter, counsel sought "reconsideration" of Defendant's denial of Plaintiff's religious exemption request, or "a new request" for a religious exemption. (*Id.*) In support, counsel

3

summarized Plaintiff's views and sought "to provide additional context" by "clarify[ing] that his religious identity and beliefs are rooted in Christianity." (*Id.*) According to counsel, Plaintiff believed that "all life is sacred," that "life begins at conception," and that "aborted fetal cell lines, genetically modified and/or artificially preserved or 'immortalized' human cell lines, viral vector technology, mRNA genetic modification technology, and spike protein technology" were impermissibly used to develop the COVID-19 vaccine. (*Id.*) Counsel also cited several biblical verses and explained that Plaintiff's "faith in God and Jesus Christ affirms his belief in the power of prayer and natural remedies as the primary immediate means of healing illnesses and injuries." (*Id.*) Although counsel reserved the right to seek legal relief, the letter emphasized that Plaintiff "tremendously values" his job and "would like nothing more" than to remain in his role. (*Id.*)

On January 4, 2022, Defendant terminated Plaintiff's employment after twenty years of service. (*Id.* ¶¶ 9, 18.) According to Plaintiff, "Defendant treated Plaintiff differently from other individuals who requested accommodations from its COVID-19 vaccination requirements." (*Id.* ¶ 13.) Plaintiff also alleges that Defendant had access to information showing that "the existing COVID-19 vaccine products then available to the public did not actually prevent transmission or infection." (*Id.* ¶¶ 11, 15.)

**B. Procedural History**

On March 3, 2022, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). (*Id.* ¶ 17.) In the filing, Plaintiff asserted that he was "discriminated against because of [his] religion, by being denied a religious accommodation" by Defendant. (*Id.* at Ex. E.) On September 23, 2022, the EEOC issued Plaintiff a Determination and Notice of Rights. (*Id.*) Although the EEOC determined that it would not proceed with an investigation, it notified Plaintiff of his right to sue Defendant. (*Id.*)

On December 22, 2022, Plaintiff filed this action against Defendant for violation of Title

VII of the Civil Rights of 1964, 42 U.S.C. § 2000e *et. seq.* ("Title VII"), violation of the New Jersey Law Against Discrimination, N.J.S.A. §§ 10:5-1–50 ("NJLAD"), violation of the Conscientious Employee Protection Act, N.J.S.A. §§ 34:19-1–14 ("CEPA"), wrongful termination, and unjust enrichment. (D.E. 1 at 1–2; Complaint at 5–8.) On July 26, 2023, Defendant removed this action from the Superior Court of New Jersey (Morris) to this Court on the basis of federal question, diversity, and supplemental jurisdiction. (*See* D.E. 1 at 1–8.)

On August 16, 2023, Defendant moved to dismiss the original complaint. (D.E. 7.) This Court granted the motion to dismiss without prejudice in an opinion and order dated March 5, 2024. (D.E. 15; 16.) On April 4, 2024, Plaintiff filed the FAC, in which he dropped his CEPA claim, amended his discrimination claims to include new theories, and added a claim for tortious interference with prospective economic advantage. (D.E. 18.) On May 15, 2024, Defendant filed the instant Motion, and the parties timely completed briefing. (D.E. 22; 25; 29.)

## II. LEGAL STANDARD

An adequate complaint must be "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted); *see also Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008) (stating that Rule 8 "requires a 'showing,' rather than a blanket assertion, of an entitlement to relief").

In considering a motion to dismiss pursuant to Rule 12(b)(6), a district court must conduct a three-step analysis. First, it must "tak[e] note of the elements a plaintiff must plead to state a claim." *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 904 (3d Cir. 2021) (alteration in original)

(quoting *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010)). Second, the court "disregard[s] threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *Id.* (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)). Third, the court assumes the veracity of all well-pleaded factual allegations, "constru[es] them in the light most favorable to the plaintiff, and draw[s] all reasonable inferences in the plaintiff's favor." *Lutz v. Portfolio Recovery Assocs., LLC*, 49 F.4th 323, 328 (3d Cir. 2022). "If, after completing this process, the complaint alleges 'enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of' the necessary elements of a claim, then it plausibly pleads a claim." *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 556).

Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint should be dismissed for failing to "show[] that the pleader is entitled to relief" as required by Rule 8(a)(2). *Id.*

In deciding a motion to dismiss, a court may consider the allegations of the complaint, exhibits attached thereto, and items integral to or explicitly relied upon in the complaint. *See Ali v. Amoroso*, 514 Fed. Appx. 108, 111 (3d Cir. 2013). Despite Plaintiff's apparent contention to the contrary (D.E. 25 at 5), such consideration does not convert the motion to dismiss to a motion for summary judgment. *See Pryor v. National Coll. Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002) ("[C]ertain matters outside the body of the complaint itself, such as exhibits attached to the complaints and facts of which the court will take judicial notice, will not trigger the conversion of [a Rule] 12(b)(6) motion to dismiss to [a Rule] 56 motion for summary judgment.").

### III. DISCUSSION

#### A. Counts One and Two (Violations of the NJLAD and Title VII)

In the FAC, Plaintiff continues to assert that Defendant discriminated against him on the basis of religion in violation of the NJLAD and Title VII by: (i) failing to accommodate him; (ii) treating him disparately; and (iii) retaliating against him. Plaintiff now tacks on theories of "quid pro quo" under the NJLAD and hostile work environment under the NJLAD and Title VII. As with its prior opinion, the Court will address each claim in turn. *See Schurr v. Resorts Int'l Hotel, Inc.*, 196 F.3d 486, 498 (3d Cir. 1999).

1. <u>Failure to Accommodate, Disparate Treatment, and Retaliation</u>

To state a claim for failure to accommodate, "the employee must show that: (1) she has a sincere religious belief that conflicts with a job requirement; (2) she told the employer about the conflict; and (3) she was disciplined for failing to comply with the conflicting requirement." *Wilkerson v. New Media Tech. Charter Sch. Inc.*, 522 F.3d 315, 319 (3d Cir. 2008). If a prima facie case is established, "the burden shifts to the employer to show either [1] it made a good-faith effort to reasonably accommodate the religious belief, or [2] such an accommodation would work an undue hardship upon the employer and its business." *E.E.O.C. v. GEO Grp., Inc.*, 616 F.3d 265, 271 (3d Cir. 2010) (alterations omitted) (quoting *Webb v. City of Philadelphia*, 562 F.3d 256, 259 (3d Cir. 2009)).

A plaintiff seeking to establish a prima facie case of discrimination under a disparate treatment theory must show "(1) that she is a member of a protected class; (2) she was qualified for the position she sought to attain or retain; (3) she suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference that her protected class was either a 'motivating' or 'determinative' factor in plaintiff's adverse employment action against her." *Ritter v. Lehigh Valley Health Network*, No. 22-4897, 2024

7

WL 643543, *6 (E.D. Pa. Feb 15, 2024) (citing *Makky v. Chertoff*, 541 F.3d 205, 214 (3d Cir. 2008)).

To establish a claim for retaliation, a Plaintiff must allege that "(1) he was engaged in protected activity; (2) he was [subject to an adverse job action] subsequent to or contemporaneously with such activity; and (3) there is a causal link between the protected activity and the [subsequent adverse job action]." *Sarullo v. U.S Postal Serv.*, 352 F.3d 789, 800 (3d Cir. 2003).

This Court analyzes these theories together because each of them rise or fall on whether Plaintiff has adequately pled a sincerely held religious belief. Absent a sincerely held religious belief, nothing remains in the FAC to support a claim that Defendant acted unlawfully in failing to accommodate Plaintiff, that Defendant treated Plaintiff disparately, or that Plaintiff's termination was retaliatory. *See, e.g.*, *Blackwell v. Lehigh Valley Health Network*, No. 22-3360, 2023 WL 362392, at *9 n.8 (E.D. Pa. Jan. 23, 2023) ("Because Plaintiff's Complaint fails to plead that her suspension and termination was due to a sincerely held religious belief, Plaintiff's Complaint fails to plead a cause of action for religious discrimination under Title VII pursuant to any of the three theories of liability: failure to accommodate, disparate treatment, and retaliation."); *Winans v. Cox Auto., Inc.*, 669 F. Supp. 3d 394, 399 (E.D. Pa. 2023) ("[I]n order to state a claim for religious discrimination under any theory of liability, Plaintiff must allege sufficient facts to show that his opposition to the COVID-19 vaccine arises from a sincerely held religious belief."); *McKinley*, 2023 WL 3168026, at *3.

In holding that Plaintiff had failed to adequately allege a sincerely held religious belief, this Court previously applied the Third Circuit's three-pronged approach to determine whether a belief is "religious":

> First, a religion addresses fundamental and ultimate questions having to do with deep and imponderable matters. Second, a religion is comprehensive in nature; it consists of a belief-system as opposed to an isolated teaching. Third, a religion often can be recognized by the presence of certain formal and external signs.

*Fallon v. Mercy Catholic Med. Ctr. of Se. Pennsylvania*, 877 F.3d 487, 491 (3d Cir. 2017) (quoting *Africa v. Com. of Pa.*, 662 F.2d 1025, 1032 (3d Cir. 1981)). This Court proceeds under the same test with the understanding that determining whether Plaintiff's beliefs are religious "presents a most delicate question." *Africa*, 662 F.2d at 1031.

Ultimately, Plaintiff adds nothing to the FAC that changes the conclusion reached in the March 5, 2024 opinion. Certainly, Plaintiff has added some detail about his religion-based concerns with the COVID-19 vaccine, including that his opposition to abortion and human genetic modification "are integral to his comprehensive belief system concerning deep and imponderable matters of right and wrong, good and evil, and life, death and the afterlife." (D.E. 18 ¶ 1.) This Court finds these allegations to be precisely the type of "broad-based re-working of legal jargon [that] [are] not entitled to a presumption of factual accuracy." *Cobb v. Truong*, No. 13-1750, 2016 WL 1161083, at *4 (W.D. Pa. Mar. 24, 2016); *see also Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016) ("Perhaps 'some allegations, while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross the line between the conclusory and the factual,' but the clearest indication that an allegation is conclusory … is that it embodies a legal point.") (quoting *Peñalbert—Rosa v. Fortuño—Burse*t, 631 F.3d 592, 595 (1st Cir. 2011)). Plaintiff cannot satisfy the *Africa* test by merely repeating its buzzwords, and this Court excludes from its analysis the allegations that "paraphrase in one way or another the pertinent statutory language or elements of the claims in question." *Connelly*, 809 F.3d at 790.

This Court also considers each of the allegations against the background and within the

9

context that Plaintiff's own exhibits provide. It must be reiterated that Defendant afforded Plaintiff multiple opportunities to provide color and context to his religious beliefs at the time of his exemption request. Each time, Plaintiff provided the same spirituality-based reasoning and swore that his views were complete, truthful, and accurate. Plaintiff expressly stated on two separate occasions that he is not associated with any mainstream religion, yet now alleges that "[t]eachings and elements of Christianity are incorporated into Plaintiff's religious observance and identity." (D.E. 18 ¶ 2 n.1.) These contradictory allegations are thus given little, if any, weight in this analysis. *See Vorchheimer v. Philadelphian Owners Ass'n*, 903 F.3d 100, 112 (3d Cir. 2018) (explaining that when a plaintiff's "own exhibits contradict her allegations in the complaint, the exhibits control").

It is also notable that Plaintiff has added allegations concerning the efficacy of the COVID-19 vaccines against the Omicron variant that was prevalent around the time of Plaintiff's termination, including that Defendant had access to information "indicating that the existing COVID-19 vaccine products then available to the public did not actually prevent transmission or infection" and that the Pfizer vaccine provided "'very little protection, if any' against the Omicron strain." (D.E. 18 ¶¶ 11–12.) But Plaintiff's concerns about the effectiveness of COVID-19 vaccines bear no relationship to the present discussion and, if anything, actually serve to strengthen the view that Plaintiff's request is personal and/or medical in nature as opposed to religious. *See Garza v. Wellspan Philhaven*, No. 23-00698, 2024 WL 3904984, at *5 (M.D. Pa. Aug. 22, 2024) ("Belief about a vaccine's effectiveness or safety is a medical belief, not a religious one.")

Because Plaintiff has failed to allege a sincerely held religious belief, his religious discrimination claims based on the theories of failure to accommodate, disparate treatment, and

10

retaliation are dismissed for failure to state a claim. [2]

    2. <u>Quid Pro Quo</u>

Plaintiff alleges a theory of quid pro quo discrimination under the NJLAD on the basis that "Defendant attempted to pressure [P]laintiff into abandoning or otherwise acting inconsistently with his sincerely held religious beliefs…" (D.E. 18 ¶ 20 n.4.)  This Court finds no precedent for such a claim under the NJLAD and, in any event, dismisses this theory as it has found that Plaintiff did not allege a sincerely held religious belief.

    3. <u>Hostile Work Environment</u>

Plaintiff does not explain the basis for his hostile work environment theory in either the FAC or his opposition; thus only a brief discussion will follow. "The *sine qua non* of a hostile work environment claim is a workplace. . . permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Fitzgerald v. Shore Mem'l Hosp.*, 92 F. Supp. 3d 214, 240 (D.N.J. 2015) (internal quotations marks and citation omitted).  Nothing in the FAC or the accompanying exhibits shows that Plaintiff ever experienced any ridicule over his twenty years working for Defendant on the basis of his religion or otherwise.  Rather, the correspondence attached as exhibits to the FAC depicts a cordial and respectful dialogue, which supports Plaintiff's counsel's statement that Plaintiff "tremendously values the time he has spent" working for Defendant.  Accordingly, Plaintiff's hostile work environment claim is dismissed.

---

[2] Having made this determination, this Court declines to address the issue of whether Defendant would have sustained undue hardship by maintaining Plaintiff's employment, as well as the other elements of the several theories.

11

### B. Count Four (Wrongful Termination)

Plaintiff advances contractual and tortious theories to support his wrongful termination claim under the common law.  To state a claim for wrongful termination, an employee must show that "the discharge is contrary to a clear mandate of public policy."  *Tartaglia v. UBS PaineWebber Inc.*, 961 A.2d 1167, 1179 (N.J. 2008) (quoting *Pierce v. Ortho Pharm. Corp.*, 417 A.2d 505, 512 (N.J. 1980)).  An employee who is wrongfully discharged may maintain a cause of action in contract or tort or both.  *Pierce*, 417 A.2d at 512.  Plaintiff advances both.  (D.E. 18 at 11.)

This Court originally dismissed Plaintiff's wrongful termination claim because "the allegations point[ed] to no public policy that was contravened."  (D.E. 15 at 11–12.)  Nothing added to the FAC alters that conclusion.  To the extent Plaintiff points to the alleged violation of his statutorily protected religious beliefs as the public policy in this case (*see* D.E. 18 ¶ 27), the Court rejects this argument.  *See Lawrence v. Nat'l Westminster Bank New Jersey*, 98 F.3d 61, 73 (3d Cir. 1996) ("Because the sources of public policy [plaintiff] relies on are coterminous with his statutory claims, he cannot advance a separate common law public policy claim.")

Plaintiff's new contractual theory puts forth that the termination is wrongful insofar as it "constitutes a breach of an implied contract of good faith and fair dealing implicit in all contracts."  (D.E. 18 ¶ 27.)  As there is no allegation that any express or implied contract governed Plaintiff's employment with Defendant, it follows that there can be no cause of action based on a violation of implied contractual provisions.  *See Piper v. Wells Fargo & Co.*, No. 17-6222, 2018 WL 1942524, at *3 (D.N.J. Apr. 25, 2018) ("The law of New Jersey, as articulated by the New Jersey Supreme Court after, is well settled that causes of action for breach of implied contractual provisions cannot proceed without an underlying express or implied contract.")

12

(citing *Wade v. Kessler Inst.*, 798 A.2d 1251, 1262 (N.J. 2002)).

In sum, Plaintiff's claim for wrongful discharge is inadequate under both contractual and tort theories and is dismissed for failure to state a claim.

### C. Count Five (Unjust Enrichment)

To state a claim for unjust enrichment, "a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust." *Iliadis v. Wal-Mart Stores, Inc.*, 922 A.2d 710, 723 (N.J. 2007) (quoting *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 554 (N.J. 1994)). A claim for unjust enrichment "requires that plaintiff show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." *Bava v. Hamilton Farm Golf Club*, No. 08-5473, 2009 WL 2778108, at *3 (D.N.J. Aug. 28, 2009) (quoting *VRG Corp.*, 641 A.2d at 526 (N.J. 1994)). Aside from wholly conclusory language in his causes of action, Plaintiff does not adequately allege any basis for an unjust enrichment claim and does not oppose its dismissal in his opposition brief; it is therefore dismissed.

### D. Count Six (Tortious Interference)

To state a claim for tortious interference with prospective economic advantage, a plaintiff must show "(1) some protectable right, such as a prospective economic or contractual relationship; (2) an intentional and malicious interference with that expectation; (3) a causal connection between the interference and the loss of the prospective gain; and (4) damages." *Stedrak v. Seton Hall Univ.*, No. A-0726-21, 2023 WL 4418310, at *5 (N.J. Super. App. Div. July 10, 2023) (citing *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 116 N.J. 739, 751–52 (1989)); *Lamorte Burns & Co. v. Walters*, 167 N.J. 285, 305–06 (2001). Plaintiff does not

13

explain any basis for his tortious interference claim in the FAC, nor can one be gleaned from the face of the FAC or Plaintiff's briefing. The FAC does allege that Defendant "wrongfully depriv[ed] [Plaintiff's] income, compensation and/or benefits that he reasonably expected to earn." (D.E. 18 ¶ 33.) Putting aside the conclusory nature of these allegations, a claim for tortious interference with prospective economic advantage "must be directed against a defendant who is not a party to the relationship giving rise to the economic interest." *Cataldo v. Moses*, No. A-4943-04T3, 2006 WL 1450382, at *10 (N.J. Super. Ct. App. Div. May 26, 2006). Since Plaintiff's employment relationship with Defendant gives rise to the alleged economic interest here, Plaintiff's tortious interference claim fails to state a claim.

### E. Dismissal with Prejudice

This Court lastly addresses whether the FAC should be dismissed with or without prejudice. Courts may dismiss with prejudice where any future amendment would be "inequitable or futile." *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 110 (3d Cir. 2002) (citations omitted). In the present case, Plaintiff has already been afforded an amended complaint and has had the benefit of reviewing this Court's prior opinion, which specifically discussed the deficiencies in the original pleading. Despite having that roadmap and as explained above, Plaintiff has failed to rectify the issues in the FAC. *See Columbus LTACH Mgmt., LLC v. Quantum LTACH Holdings*, LLC, No. 16-6510, 2019 WL 2281632, at *4 (D.N.J. May 29, 2019) (dismissing with prejudice because plaintiff had repeatedly failed to correct the same deficiency in his pleading); *see also Moriarty v. Dibuonaventura*, No. 14-2492, 2015 WL 1469515, at *4 (D.N.J. Mar. 30, 2015) ("Plaintiff's Amended Complaint fails to plead plausible claims for relief and fails to cure the deficiencies of the original Complaint. The Court previously identified these deficiencies and gave Plaintiff an opportunity to cure them. Because Plaintiff has, again, failed

to plead plausible claims for relief in non-conclusory terms, Plaintiff's claims against [the defendant] will be dismissed with prejudice.")

Having reviewed the two nearly identical complaints and the documentary evidence regarding Plaintiff's request and subsequent termination, this Court is not persuaded that any potential factual allegations can be added to support a viable claim of religious discrimination under Title VII or the NJLAD.  Because this Court has determined that the basis for Plaintiff's objections to the vaccine mandate are not based on a sincerely held religious belief, further amendments to the FAC would be futile.  *See, e.g.*, *Fallon v. Mercy Cath. Med. Ctr.*, 877 F.3d 487, 494 (3d Cir. 2017) (finding no abuse of discretion in dismissal with prejudice where plaintiff "had not proposed any amendments that would cure the fundamental deficiency in his claims—that his anti-vaccination beliefs are not religious in nature" and "it d[id] not appear that [the plaintiff] could do so"); *Aliano v. Township of Maplewood*, No. 22-5598, 2023 WL 4398493, at *11 (D.N.J. July 7, 2023) (holding that further amendment would be futile where Court found that Plaintiffs' requests did not adequately state religious objections to Defendant's COVID policy).

As discussed above, Plaintiff's wrongful termination, unjust enrichment, and tortious interference claims are pled in wholly conclusory terms, and dismissal of these claims is not opposed in any meaningful way in Plaintiff's opposition brief.  (*See generally* D.E. 25.)  Accordingly, dismissal of all claims with prejudice is appropriate.

IV. **CONCLUSION**

For the reasons set forth above, Defendant's Motion is **GRANTED**, and the FAC is **DISMISSED WITH PREJUDICE**.  An appropriate order follows.

___/s/ Susan D. Wigenton_____

15

**SUSAN D. WIGENTON, U.S.D.J.**

Orig: Clerk
cc: Parties
     James B. Clark, U.S.M.J.